SECOND DIVISION

No. 1-08-0805


THE PEOPLE OF THE STATE OF ILLINOIS,   ) Appeal from the
                     ) Circuit Court of
                     ) Cook County
     Plaintiff-Appellee,      )
                     )
v.                  ) 05 MC 619520
                     )
                     )
                     )
APRIL HAYNES,          ) Honorable
                     ) Robert Clifford,
     Defendant-Appellant.     ) Judge Presiding.
                     )
                     )


JUSTICE KARNEZIS delivered the opinion of the court:

Following a jury trial, defendant April Haynes was convicted of resisting a police officer and attempting to obstruct justice (720 ILCS 5/31-1 (West 2006)) and was sentenced to 1 year of conditional discharge and 15 days of community service. On appeal, defendant argues: (1) trial counsel was ineffective for failing to request that the jury be instructed on self-defense; (2) the trial court failed to comply with Supreme

Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007); and (3) the trial court improperly imposed a fee pursuant to section 5-1101(a) of the Illinois Vehicle Code (55 ILCS 5/5-1101(a) (West 2006)).   For the following reasons, we affirm the judgment of the trial court as modified.

BACKGROUND

Defendant was charged with battery of a police officer (720 ILCS 5/12-3(a)(1) (West 2006)), resisting arrest (720 ILCS 5/31-1(a) (West 2006)), attempted obstruction of justice ( 720 ILCS 5/31-4(a) (West 2006)) and permitting an unauthorized person to drive her vehicle (625 ILCS 5/6-304 (West 2006)) after defendant's car, being driven by her unlicensed son, slid into a pole in Lansing, Illinois.  Defendant was arrested after she failed to inform police officers that her son was the driver of the vehicle.  When officers attempted to arrest her, defendant refused to cooperate and place her hands behind her back.  It took five officers to eventually get defendant's hands cuffed behind her back.

Nadine Guthrie testified that she was driving her daughter to school on November 23, 2005, at approximately 8 a.m., when she saw a car swerve and hit a metal pole in the 3300 block of Ridge Avenue in Lansing, Illinois.   She saw two youths exit the vehicle.  Guthrie continued to drive her daughter to school but planned to return to the scene to see if the boys needed help.

Kaila Seimers was working in Mancino's restaurant  at about 8 a.m. on November 23, 2005, when she heard a car crash.  She saw that the car had hit a pole

2

and watched as two young men got out of the car. They walked over to her and asked to use her phone. The young men left after they made a call. Seimers called the police and reported the accident.

Several minutes later, defendant entered the restaurant and asked Seimers to tell the police that she (defendant) had been the one driving the car. Seimers testified that she refused to lie and went back to work. Defendant went outside to wait for the police to arrive.

Officer Hynek testified that he received a dispatch stating that there was a non-injury car accident at 3300 Ridge Road. When Officer Hynek arrived at the scene, he saw a car resting against a light pole. He approached the vehicle and saw defendant standing there. Defendant told him that her car slid into the pole and that she was the only one in the car. Officer Hynek filled out the accident report that included defendant's information. Defendant never told Officer Hynek that her son was driving the car. Officer Hynek told defendant to wait in Mancino's restaurant while he filled out the report.

While Officer Hynek was filling out the report, Nadine Guthrie arrived at the scene of the accident. She asked if the two people in the car were injured. She then stated that she saw two young men exit the car after the accident.

After his conversation with Guthrie, Officer Hynek went into Mancino's restaurant to talk to defendant. He asked defendant about her children. Defendant responded that her children were in school. Officer Hynek contacted another police officer to go

speak with defendant's oldest son Lance at the local high school.  Lance later admitted to Officer Yonker that he was the one who drove the car into the pole.

Officer Hynek gave defendant several opportunities to admit that she was not driving the car, but she continued to maintain that she was the driver.  Officer Hynek told defendant she was under arrest and asked her to put her hands behind her back.  Officer Hynek testified that it is police department policy to handcuff people with their hands placed behind their back.  Defendant placed her hands in front of her chest and clenched them together.  Officer Hynek and Officer Klingleschmitt tried to break defendant's hands apart and bring them behind her back, but defendant fell to the ground.

While defendant was on the ground, Officers Hynek and Klingleschmitt continued to try to get defendant's hands behind her back, but defendant hid her hands underneath her body.  Officer Hynek put his knee in her back and when that was ineffective, he used the Taser gun twice on her back.  Officer Hynek testified that he used the Taser gun on a "dry stun" mode, which only inflicts localized pain, unlike the gun's other mode, which inflicts greater pain to the entire body by electric shock.

Video cameras in Mancino's restaurant captured most of defendant's arrest.  The videotapes were entered into evidence by the State and played to the jury.   Officer Hynek gave a narrative of the videotape as part of his testimony.  The video showed the following.  Defendant was standing inside the restaurant struggling with Officers Hynek and Klingleschmitt as they attempted to place her under arrest.  The three then fell to

4

the ground and defendant hid her hands underneath her body. Officer Hynek threatened to use the Taser gun on defendant and eventually used the Taser on her shoulder in "dry mode" after he attempted to free defendant's hands with a knee to her back. When Officer Hynek tasered defendant, Officer Klingeschmitt was able to grab defendant's arm. However, defendant quickly pulled her arm away and put it under her body. Officer Hynek used the Taser gun again. Defendant then kicked Officer Hynek in the groin. Defendant refused to place her hands behind her back and refused to cooperate with the officers despite being told repeatedly that she was under arrest. Three additional officers arrived at the scene and attempted to gain defendant's cooperation. Defendant resisted the request of all five officers. The officers eventually used pressure points to free defendant's hands. Finally, the officers were able to handcuff defendant's hands behind her back using three sets of handcuffs. The video ends with defendant being escorted out of the restaurant.

After she was handcuffed, Officer Hynek drove defendant to the station. During the transport, defendant admitted that she knew her son Lance Dudley was driving her car and that Lance did not have a driver's permit. The parties stipulated that Lance Dudley did not have a driver's license on the date of the accident.

Following the court's denial of defendant's motion for a directed finding, defendant testified. Defendant also gave a narrative of the videotape obtained from Mancino's restaurant.

Defendant testified that she was shopping for groceries at about 7:30 a.m. on the day of the incident and that she intended to drive her sons to school that morning. She was on her way home when she received a call from her son Lance who told her that he was driving and had hit a pole. Lance was not given permission to drive and did not have a driver's license. She drove to Mancino's and walked over to the site of the accident. Lance was no longer there. Officer Hynek arrived while she was standing there.

Defendant testified that Officer Hynek asked her what happened and she told him that the car slid into the pole. She testified that she never told officers that she was driving the car. Defendant went into Mancino's restaurant to wait for Officer Hynek to fill out his report.

Officer Hynek came into the restaurant and yelled at defendant to "put your hands behind your back. Lance was driving." Defendant testified that she told Officer Hynek that she understood that he may be placing her under arrest but that she was "to [sic] large to be cuffed from one set of cuffs behind [her] back" and asked that she be handcuffed in front.

Defendant testified that she did not resist arrest but Officer Hynek grabbed her hands and jerked her around in a circular motion. Defendant testified that she continually told the officers that she would go with them but that Officer Hynek kept twirling her around. She also testified that she attempted to explain to the officers that she had numerous medical conditions but Officer Hynek would not listen and tasered

her when she was standing up. Defendant claims that this incident was missing from the video. She fell to the ground as she was paralyzed from being tasered. She lost control of her body and rolled over on her stomach and onto her hands. Defendant also claims that this was missing from the video. She continually asked officers to handcuff her in front but Officer Hynek threatened to taser her again. Officers eventually handcuffed her behind her back with three sets of handcuffs.

Defendant testified that the video was missing many incidents. However, the parties stipulated to the authenticity of the video. In addition, defendant denied asking Kaila Seimers to lie.

Defendant also called Officer Klingleschmitt as a witness. After defendant was placed in custody, Officer Klingleschmitt filled out a "Use of Force" report. Officer Klingleschmitt did not include in her report that defendant kicked Officer Hynek in the groin because she did not see that happen.

After hearing all of the evidence, the jury convicted defendant of resisting arrest and attempting to obstruct justice. Defendant was sentenced to 1 year of conditional discharge with 15 days of community service. She was also ordered to pay a fee. It is from this judgment that defendant now appeals.

ANALYSIS

Ineffective Assistance of Counsel

Defendant first claims that trial counsel was ineffective when he failed to tender a self-defense instruction so that the jury could consider whether defendant's actions

were intended to defend herself against the officers' use of force. Specifically, defendant claims that there was sufficient evidence to show that her use of force, if any, was justified in light of the officers' prior use of excessive force.

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A defendant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) she was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Where the defendant fails to prove prejudice, the reviewing court need not determine whether counsel's performance constituted less than reasonable assistance. *Strickland*, 466 U.S. at 697, 80 L. Ed.2d at 699, 104 S. Ct. at 2069; *People v. Flores*, 153 Ill. 2d 264, 284 (1992). The defendant bears the burden of overcoming a strong presumption in favor of finding that counsel's advocacy was effective. *Albanese*, 104 Ill. 2d at 525. Failure to request a self-defense instruction constitutes ineffective assistance of counsel when such a failure was not the result of trial strategy. See *People v. Wright*, 111 Ill. 2d 18, 26-27 (1986).

A person resists arrest when he or she commits a physical act of resistance or obstruction, that is, a physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties, such as going limp, forcefully resisting arrest, or

physically helping another party to avoid arrest. *People v. Raby*, 40 Ill. 2d 392, 399 (1968); *People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008).

An arresting officer generally may use any force reasonably necessary to effectuate an arrest and need not retreat in the face of resistance. 720 ILCS 5/7-5(a) (West 2006). An arrestee may not use force to resist an arrest even if the arrest is unlawful. 720 ILCS 5/7-7 (West 2006). However, the use of excessive force by a police officer invokes the right of self-defense. 720 ILCS 5/7-1(a) (West 2006). "A person is justified in the use of force against another when and to the extent that [s]he reasonably believes that such conduct is necessary to defend [her]self or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2006).

A defendant is entitled to an instruction on her theory of the case if there is some foundation for the instruction in the evidence. *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997). Only a slight amount of evidence is necessary to justify giving an instruction. *People v. Robinson*, 92 Ill. App. 3d 972 (1981). An instruction on self-defense is required in a resisting arrest case when the defendant has presented some evidence of excessive force on the part of the arresting officer. *People v. Williams*, 267 Ill. App. 3d 82, 88 (1994).

Defendant argues that this case is analogous to *People v. Sims*, 374 Ill. App. 3d 427 (2007). In *Sims*, the defendant was prosecuted for battery and resisting arrest. The trial court rejected the defendant's request for a self-defense instruction based on the officers' use of excessive force. The evidence produced at trial showed that the

defendant submitted peacefully to being handcuffed and was placed in the squad car without incident. He did not use force against the officers until after his girlfriend arrived at the car. Defendant asserted that he only resorted to force when one officer put his hands on defendant's girlfriend and then one of the officers threw defendant to the ground. *Sims*, 374 Ill. App. 3d at 433.

On appeal, the *Sims* court found that the trial court incorrectly denied the defendant's request for a self-defense instruction because the defendant produced evidence that demonstrated that he was afraid and was struggling to try to get away from the officers. *Sims,* 374 Ill. App. 3d at 435. In addition, a jury could have reasonably believed that officers used excessive force where photographs of the defendant showed that he had sustained a swollen eye and numerous cuts and bruises. *Sims*, 374 Ill. App. 3d at 435.

We find this case similar to *People v. Wicks*, 355 Ill. App. 3d 760 (2005). In *Wicks*, the defendant argued that the trial court erred when it refused defendant's request for a self-defense instruction in a resisting arrest case. The *Wicks* court affirmed the decision of the trial court finding that the evidence adduced at trial showed that the defendant refused from the outset to cooperate with police. The police officers' efforts were designed to get the defendant's hands out of his pockets. As such, the police officers' use of force was justified and not excessive. Consequently, the trial court did not err when it refused to give a self-defense instruction. *Wicks,* 355 Ill. App. 3d at 764.

Here, defendant did not submit peacefully to the officers to be handcuffed (*cf. People v. Sims*, 374 Ill. App. 3d 427, 435 (2007)). Similar to *Wicks*, defendant refused to follow the officers' orders and it was only after defendant refused to cooperate with the officers by keeping her hands clenched in front of her that the officers resorted to using force. Defendant testified that she knew Officer Hynek was placing her under arrest and told her to "stand up, and put your hands behind your back." Defendant testified that she replied, "Officer, I understand that you may be placing me under arrest, however, I am to [*sic*] large to be cuffed from one set of cuffs behind my back" and asked to be cuffed in the front. Officer Hynek testified that officers told defendant numerous times that they could not handcuff her in front but would accommodate her by using multiple handcuffs behind her back. However, defendant would not put her hands behind her back and wrestled with the officers, causing defendant and the officers to fall to the ground. The video shows that once on the ground, defendant hid her hands underneath her body. It was only after defendant repeatedly refused to cooperate with the officers that Officer Hynek used his taser gun. It eventually took five officers to place defendant in custody. Defendant was handcuffed behind her back with three sets of handcuffs.

Like *Wicks*, the evidence in this case does not support the giving of a self-defense instruction. A self-defense instruction should only be given in a resisting arrest case when a defendant resists arrest after the officers resort to using excessive force. A self-defense instruction is inappropriate in this case where defendant resisted arrest

and then officers used force to effectuate the arrest. Consequently, we cannot find that defendant was prejudiced by defense counsel's failure to request a self-defense instruction. As such, we find that counsel provided effective assistance.

<center>Rule 431(b) Violation</center>

Defendant next claims the trial court failed to comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) when it failed to question one juror whether she understood and accepted each of the four Rule 431(b) principles.

Defendant argues that the trial court's failure to comply with Rule 431(b) requires automatic reversal and is not subject to harmless error. The State responds that defendant has forfeited review of this issue by failing to object at trial and failing to include this issue in her posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the State contends that the error should be deemed harmless as the error was not "structural" so as to require automatic reversal. Defendant urges us to consider this issue as plain error. We review the trial court's compliance with a supreme court rule *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

Supreme Court Rules 451(c) (210 Ill. 2d R. 451(c)) and 615(a) (134 Ill. 2d R. 615(a)) are applied when assertions of instructional error are raised. When the defendant fails to object to the alleged instructional error at trial, Rule 451(c) is applied. 210 Ill. 2d R. 451(c). Rule 451(c) provides that "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." 210 Ill. 2d R.

<center>12</center>

451(c). When a defendant objects to an error at trial but fails to raise the issue in posttrial motion, Rule 615(a) is applicable. 134 Ill. 2d R. 615(a). Rule 615(a) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). Plain error analysis under Supreme Court Rules 451(c) and 615(a) is construed identically. *People v. Durr*, 215 Ill. 2d 283, 296-97 (2005), citing *People v. Keene*, 169 Ill. 2d 1, 32 (1995).

The plain error doctrine allows a court of review to consider a forfeited error when "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

> "In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187..

However, before considering plain error, we must first consider whether error occurred at all. *People v. Harris*, 225 Ill. 2d 1, 31 (2007).

Defendant contends that under the second prong of the plain error doctrine, the trial court's failure to comply with Rule 431(b) denied him his basic guarantee of obtaining a fair trial by an impartial jury.

In *People v. Zehr*, 103 Ill. 2d 472, 477 (1984), our supreme court held that "essential to the qualification of jurors in a criminal case" is that they know : (1) a defendant is presumed innocent, (2) he is not required to present evidence on his own behalf, (3) the State must prove him guilty beyond a reasonable doubt, and (4) his decision not to testify may not be held against him.

In 1997, our supreme court amended Rule 431(b) to embrace the *voir dire* principles established in *Zehr.* 177 Ill. 2d R. 431(b). The new rule required that if requested by defendant, the trial court was required to ask potential jurors, individually or in a group, whether that juror understood and accepted the four *Zehr* principles. 177 Ill. 2d R. 431(b). At that time, the trial court had no obligation to *sua sponte* question jurors as to the *Zehr* principles. *People v. Graham*, 393 Ill. App. 3d 268, 272 (2009).

On May, 1, 2007, Rule 431(b) was amended to require the trial court to question potential jurors on the Rule 431(b) principles in every case, without defendant's prompting, whether they understand and accept each *Zehr* principle. *Graham*, 393 Ill. App. 3d at 273. The current version of Rule 431(b) reads as follows:

" 'The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant

can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.' "*People v. Arredondo*, 394 Ill. App. 3d 944, 950 (2009), quoting Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007).

In enacting the amended version of Rule 431(b), our supreme court imposed a *sua sponte* duty on courts to ask potential jurors individually or in a group whether they accept these principles. *Graham*, 393 Ill. App. 3d at 273.

The trial in the present case occurred after the 2007 amendment became effective. Thus, the trial court had a duty to question the jurors about the Rule 431(b) principles and allow the jurors to indicate whether they accepted the principles. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Defendant claims that during *voir dire* in the present case, the trial court addressed the Rule 431(b) principles with 11 of the 12 jurors. Defendant urges that the trial court failed to make the proper inquiry of Tammie Bradley, who was initially selected as an alternate juror, but was later empanelled when a juror was dismissed.

The record in this case reveals that the trial court questioned juror Bradley regarding the subject matter of only one of the *Zehr* principles, that the State was required to prove defendant guilty beyond a reasonable doubt. Therefore, error

occurred here where the trial court failed to question juror Bradley as to whether she accepted the three other *Zehr* principles. We must now consider whether this error requires reversal.

A division of this court recently considered this precise question in *People v. Magallanes*, No. 1-07-2826 (December 23, 2009). To answer this question, this court looked at the recent supreme court decision of *People v. Glasper*, 234 Ill. 2d 173, 200 (2009). In *Glasper*, our supreme court considered whether the trial court's denial of defense counsel's request to question jurors as to the *Zehr* principles, in violation of the previous version of Rule 431(b), was subject to harmless error analysis. After a lengthy discussion of whether a trial court's failure to comply with Rule 431(b) is considered structural so as to require automatic reversal, the *Glasper* court determined that a violation of Rule 431(b) did not require automatic reversal and was amenable to harmless error review. *Glasper*, 234 Ill. 2d at 200. After applying the harmless error analysis, the court affirmed the defendant's conviction. The *Glasper* court did, however, limit its holding to "the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent version of the rule." *Glasper*, 234 Ill. 2d at 200. The *Glasper* court further stated that "[w]e also make it clear that we are not holding that a Rule 431(b)(4) violation could never result in reversible error." *Glasper*, 234 Ill. 2d at 200.

Relying on *Glasper*, the *Magallanes* court determined that a trial court's failure to comply with Rule 431(b) does not mandate automatic reversal, either under harmless

16


1-08-0805

error or plain error analysis. Citing a long line of supreme court cases, this court found that an analysis of the facts and circumstances of each particular case is required to determine whether defendant was in fact denied a fair trial. *Magallanes*, slip op. at 30, quoting *People v. Nitz*, 219 Ill. 2d 400, 414 (2006).

The *Magallanes* court then went on to discuss how other panels of the First and Second District Appellate Court in *Graham,* 393 Ill. App. 3d at 275, *People v. Wilmington*, 394 Ill. App. 3d 567 (2009), *People v. Arredondo*, 394 Ill. App. 3d 30 (2009), *People v. Madrid*, 394 Ill. App. 3d 465 (2009) and *People v. Blair*, 395 Ill. App. 3d 465 (2009), have considered the effect of a trial court's failure to fully comply with the amended version of Rule 431(b) in the context of plain error. All of these cases have held that while harmless error occurred in *Glasper* under the previous version of Rule 431(b), harmless error would be inapplicable under the 2007 version of Rule 431(b). The appellate courts in *Graham, Wilmington, Arredondo*, *Madrid* and *Blair* all found the courts' failure to fully comply with Rule 431(b) denied defendant a "substantial right," therefore constituting automatic reversal without an inquiry into the closeness of the evidence or the prejudice to defendant. *Magallanes*, slip op. at 29.

In reconciling *Glasper* with the *Graham-Wilmington* line of cases, the *Magallanes* court found:

"[W]e see no quantitative or qualitative difference between a trial court's refusal to ask the required questions under the version of Rule 431 in effect prior to the amendment of 2007 and a trial court's failure to ask the same questions as

17

required by Rule 431 after the amended rule became effective.  Under both versions of the Rule, the trial court was required to ask the venire the identical questions.  Indeed, in *Glasper* the trial court refused to ask the required questions while in *Graham, Wilmington*, *Arredondo*, *Madrid*, *Blair* and the instant case, the trial court inadvertently failed to ask the required questions, and defense counsel failed to bring this failure to the court's attention.  *Magallanes*, slip op. at 39.  Therefore, a reviewing court may consider the applicability of the second prong of plain error analysis and then decide not to reverse a case.  *Magallanes*, slip op. at 39.

Applying the plain error doctrine as explained in *Herron*, the *Magallanes* court found that the trial court's failure to comply with Rule 431(b) constituted plain error for the purpose of determining whether either prong was satisfied so as to bypass forfeiture.  However, the court found that the evidence was not closely balanced and that the error did not differ "quantitatively or qualitatively * * * from the error found to be harmless in *Glasper*."  *Magallanes*, slip op. at 30.  Therefore, the defendant failed to satisfy the second prong of the plain error doctrine and reversal was not mandated.  *Magallanes*, slip op. at 30.

With *Magallanes* as our guide, we find the trial court's failure to comply with Rule 431(b) with respect to juror Bradley was not automatic reversible error.  Instead, we apply the plain error doctrine as outlined in *Herron* to the facts of the instant case.

Error indeed did occur in this case.  However, the evidence was not so closely balanced that the "error alone severely threatened to tip the scales of justice against

18

[her]." *Herron*, 215 Ill. 2d at 186-87. The testimony of Officer Hynek in conjunction with the video shows that defendant repeatedly resisted officers' requests to place her hands behind her back. It took a Taser gun, a knee to the back and the use of pressure points, as well as five officers, to obtain defendant's compliance.

With respect to the second prong, similar to *Magallanes*, we find that the trial court's failure to question juror Bradley using the *Zehr* principles does not differ quantitatively or qualitatively from the error found to be harmless in *Glasper*. Therefore, we find that defendant failed to prove that "'the error caused a severe threat to the fairness'" of the trial. *Herron*, 215 Ill. 2d at 187, quoting *People v. Hopp*, 209 Ill. 2d 1, 12 (2004). Hence, no plain error occurred in this case.

Fees

Finally, defendant argues, and the State agrees, that the $5 court system fee was improperly imposed in this case where section 5-1101(a) of the Counties Code provides that a fee may be levied against a person for a judgment of guilt or grant of supervision in violation of the Illinois Vehicle Code or a similar municipal ordinance. See 55 ILCS 5/5-1101(a) (West 2006).

Although defendant was initially charged with permitting an unauthorized person to drive her vehicle in violation of section 6-304 of the Illinois Vehicle Code, defendant was acquitted of this charge. Defendant was convicted of resisting arrest and attempting to obstruct justice, which are not offenses under the Illinois Vehicle Code. Consequently, the $5 court system fee should be vacated.

Based on the foregoing, the judgment of the trial court is affirmed as modified.

Affirmed as modified.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.

1-08-0805

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

　　　　Plaintiff-Appellee,

　v.

APRIL HAYNES,

　　　　Defendant-Appellant.

No. 1-08-0805

Appellate Court of Illinois
First District, Second Division

March 30, 2010

JUSTICE KARNEZIS delivered the opinion of the court.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Robert Clifford, Judge Presiding.

For APPELLANT, Michael J. Pelletier, Deputy Appellate Defender of the State of Illinois (Linda Olthoff, Assistant Appellate Defender, of counsel)

For APPELLEE, Anita Alvarez State's Attorney of Cook County (James E. Fitzgerald, William Toffenetti, Kathryn Roy, Assistant State's Attorneys, of counsel)