2022 IL App (1st) 200651-U

Order filed: January 27, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-20-0651

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 4040 |
| | ) | |
| KENNETH OLIVER, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Martin concur in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for aggravated battery of a police officer and his 10-year sentence are affirmed, where he did not demonstrate that he was: (1) not proven to be guilty beyond a reasonable doubt, (2) provided ineffective assistance with respect to the instructions provided to the jury, (3) prejudiced by any possible prosecutorial misconduct during the State's rebuttal argument, or (4) the recipient of an excessive sentence that abused the trial court's discretion.

¶ 2    Defendant-appellant, Kenneth Oliver, appeals from his conviction for aggravated battery

of a police officer and the 10-year prison sentence imposed upon him for that conviction.

Defendant raises several issues on appeal, and for the following reasons we affirm.

¶ 3    Defendant was charged by information with three counts of aggravated battery. Those

counts generally alleged that, on or about March 16, 2016, defendant made physical contact of an

insulting or provoking nature with Chicago police officer Dwayne Collier by striking him in the chest, knowing Collier to be a peace officer and during Collier's performance of his official duties. In his answer to the State's motion for discovery, defendant indicated that he "may assert the defense of lawful self-defense."

¶ 4    A jury trial was held in October 2019. During opening statements, defense counsel told the jury that the evidence would show that defendant was not guilty because he acted in self-defense after Collier choked him. The State objected on the basis that no such affirmative defense had been filed, and in response the trial court informed the jury that it would provide them with instructions as to the law that applied to the case and asked defense counsel to continue.

¶ 5    Following opening statements, the State presented the testimony of Collier, Officer Arshanette Chambers and Lieutenant Roy Boffo. Collier testified that he was in uniform and on duty as a desk officer at the 6th District police station on the morning of March 16, 2019. Collier was assisting someone else at the front desk when defendant entered the lobby talking loudly and swearing. Collier later learned that defendant was at the station to retrieve personal property that had been taken from him when he was arrested for a petty offense earlier in the day. Defendant continued to swear loudly both during and after he interacted with Boffo and was provided with two bags of belongings. Other citizens in the lobby were looking at defendant, and defendant stopped before exiting and dropped his bags on the floor. Collier asked him to leave, and defendant responded by swearing at Collier.

¶ 6    Collier walked toward defendant with the intention of escorting him outside. When Collier reached down to pick up one of defendant's bags, defendant shoved Collier in the chest. Feeling threatened and provoked, Collier tried to grab defendant's arm to place him under arrest for battery. Defendant then swatted Collier's hand away. Collier was ultimately able to subdue defendant,

handcuff him and place him under arrest with the assistance of other officers. Collier denied ever choking defendant or seeing any other officer do so. Collier admitted that he was not injured in the incident, did not take any reports from other citizens about the incident, and there was no body-camera or surveillance footage of the incident.

¶ 7    After Collier's testimony, the State moved to strike defendant's affirmative defense of self-defense. The State acknowledged that its review of the record revealed that self-defense was raised in defendant's answer to discovery, but it contended that such a defense was inapplicable to the offense charged considering section 5/7-7 of the Criminal Code of 2012 (Criminal Code). 720 ILCS 5/7-7 (West 2018).[1] The State also noted the corresponding IPI Criminal Jury Instruction (Illinois Pattern Jury Instructions, Criminal, No. 24-25.20 (4th ed. 2000) (hereinafter IPI Criminal 4th, No. 24-25.20), and cited to *People v. Powel*, 267 Ill. App. 3d 82, 88 (1994), for the proposition that an exception is made to this rule only for situations in which an officer uses excessive force. Contending that defendant made no such specific claim of excessive force, the State contended that defendant could not claim self-defense.

¶ 8    Defense counsel responded by noting surprise that this issue was being raised at this point of the trial, contending that the State should have raised its objection pretrial. Defense counsel further contended that these issues were inapplicable here, where defendant had not been charged with resisting arrest. Ultimately, the trial court denied the State's motion. Noting that defendant had claimed self-defense and that caselaw supported applying section 5/7-7 and the exception thereto for excessive force in cases involving charges of aggravated battery to a police officer, the

---

[1] This section provides: "A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

trial court held that if defendant presented sufficient evidence of excessive force at trial it would revisit the issue in determining the proper instructions to provide the jury.

¶ 9 Chambers and Boffo then testified in a manner consistent with that of Collier. Of particular importance, both testified that it was defendant that first made physical contact with Collier and neither ever saw any officer choke defendant. Boffo also testified that defendant did not have an inventory ticket for his belongings, but the police were nevertheless able to find the relevant information and return defendant's belongings.

¶ 10 After the State rested its case, defendant testified in his own defense that he was in a "pleasant" mood when he arrived at the police station, but he was cold because his coat was among the possessions taken by the police earlier that day. Defendant testified that he provided the police with an inventory ticket for his belongings and admitted that he got upset and started swearing when it took the police some time to provide him with his belongings. The police then started swearing at him and telling him to leave. Defendant than made his way to the door, before stopping and putting down his bags in order to put on his belt and coat before heading outside into the cold.

¶ 11 Collier told him to get dressed outside, and when defendant did not immediately do so Collier became agitated, swore at defendant, and began to approach the door. Collier then threw defendant's bags outside and threatened to do the same to defendant himself. Not wanting any trouble, defendant put his hands up. Nevertheless, Collier grabbed him by the neck and began choking defendant to the point that he could not breathe. Instinctively, defendant knocked Collier's hand away and defendant was thereafter handcuffed and arrested for aggravated battery. Defendant denied shoving Collier in the chest, and testified that there were no other civilians inside the police station at the time of the incident.

¶ 12    At the jury instruction conference, defense counsel asked that a fourth proposition—"That the defendant was not justified in using the force which he used"—be added to the State's offered issues instruction for aggravated battery to a police officer considering his claim of self-defense, pursuant to Illinois Pattern Jury Instructions, Criminal, No. 24-25.06A (4th ed. 2000) (hereinafter IPI Criminal 4th, No. 24-25.06A). The State responded by asserting that defendant had not produced sufficient evidence of excessive force and was therefore not entitled to a self-defense instruction. Defense counsel argued that it should be for the jury to decide if sufficient evidence of excessive force was introduced into evidence to support his claim of self-defense. The trial court agreed with defendant and ruled that the fourth proposition would be added to the issues instruction.

¶ 13    Defense counsel also tendered Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (4th ed. 2000) (hereinafter IPI Criminal 4th, No. 24-25.06), which provides: "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend [(himself) (another)] against the imminent use of unlawful force." The State responded that it was not necessary to give this instruction in addition to the fourth proposition to the issues instruction, and that in any case it did not accurately state the law applicable to this case as it did not account for defendant's need to show excessive force. The State suggested that if this instruction was to be used, it should be modified to add language accounting for defendant's heightened burden to show excessive force to support his claim of self-defense. Defense counsel responded by stating that the committee comments to the IPI Criminal instructions required the jury to be provided with instruction No. 24-25.06, and that defendant had shown sufficient evidence of excessive force such that "we should be able to use the standard defense—self-defense instruction."

No. 1-20-0651

¶ 14    The trial court indicated that it would give instruction No. 24-25.06, but it would also provide the jury with the "corollary," IPI Criminal 4th, No. 24-25.20, which provides: "A person is not authorized to use force to resist an arrest which he knows is being made by a [(peace officer) ***, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." The court indicated that the standard instruction would be slightly modified for purposes of this case, "changing 'resisting arrest' to 'resisting a lawful act.' " As the trial court explained:

> "The jury will determine whether the officer's act was lawful to tell the defendant to leave the station. The jury will determine whether the officer used any kind of force on the defendant at all. The jury will determine whether the defendant had a right to strike the officer in self-defense. The jury will determine all of that. This will cover all of those issues."

¶ 15    The State indicated it agreed with the trial court's ruling, while defense counsel indicated that it understood the court's ruling but asked that the jury be so instructed over defendant's objection. The trial court then ruled it would instruct the jury as described above, explaining:

¶ 16        "I'm going to give the IPIs to cover both arguments, and the jury will determine which version they accept and which version they don't. And that's strictly for the jury. This covers everyone's side."

¶ 17    After hearing closing arguments, the jury was instructed by the trial court. Of note, the actual relevant instructions provided to the jury were as follows:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. A person is not authorized to use force to resist an authorized act which he knows is being made by a peace officer, even if he believes that the act is unauthorized and the act is, in fact, unauthorized."

- 6 -

¶ 18    The jury then retired to deliberate. During deliberations, the jury sent out one note with the following questions: "Any proof of inventory? Any proof of ticket? Weather that day? How long was he detained?" By agreement, the jury was instructed that it had heard all the evidence and should continue to deliberate.

¶ 19    The jury ultimately found defendant guilty, defendant's posttrial motion was denied, and defendant—who was Class X eligible due to prior felony convictions for possession of a stolen vehicle and murder—was sentenced to 10-years' imprisonment. Defendant's motion to reconsider his sentence was denied, and he timely appealed.

¶ 20    On appeal, defendant first contends that he was not proven guilty beyond a reasonable doubt. We disagree.

¶ 21    The standard of review on a challenge to the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). The trier of fact is responsible for assessing the credibility of the witnesses, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Hutchinson*, 2013 IL App (1st) 102332 ¶ 27; *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). When considering the sufficiency of the evidence, it is not the reviewing court's duty to retry the defendant. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Therefore, a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Bradford*, 2016 IL 118674, ¶ 12. A reviewing court will only reverse a criminal conviction when the evidence is so improbable or unsatisfactory that there remains a reasonable

doubt as to the defendant's guilt. *Beauchamp*, 241 Ill. 2d at 8; *Collins*, 214 Ill. 2d at 217.

¶ 22     "A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (2018). As relevant here, the offense of battery rises to the level of "aggravated battery" when, in committing a battery, a person knows the individual battered to be a "peace officer *** performing his or her official duties." 720 ILCS 5/12-3.05(d)(4)(i) (2018).

¶ 23     Ordinarily, a "person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2018). However, a "person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." 720 ILCS 5/7-7 (West 2018). An exception to this rule is applied where a police officer uses excessive force, as the "use of excessive force by a police officer invokes the right of self-defense." *People v. Haynes*, 408 Ill. App. 3d 684, 690 (2011). These rules have long been found to be applicable both to cases involving resisting arrest and cases involving aggravated battery of a police officer. *People v. Taylor*, 112 Ill. App. 3d 3, 5 (1983); *People v. Witanowski*, 104 Ill. App. 3d 918, 922 (1982). "Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Lee*, 213 Ill. 2d 218, 224 (2004).

¶ 24     Defendant does not challenge the evidence that he intentionally made physical contact of an insulting or provoking nature with Collier while knowing him to be a police officer engaged in

his official duties. Rather, he contends that the State did not prove beyond a reasonable doubt that he was not acting in self-defense in response to Collier's use of excessive force. In support of this assertion, defendant relies solely on his testimony that he was choked by Collier, which purportedly "contained several indica of reliability" including the fact that his testimony "did not try to make himself appear entirely passive in the events that unfolded." In contrast, the contrary testimony of Collier, Chambers and Boffo was purportedly "inherently unbelievable" because they provided testimony that was "suspiciously identical" and they had "a motive to exonerate each other from responsibility."

¶ 25    Here, the jury clearly found the testimony of Collier, Chambers and Boffo more credible than that of defendant. On appeal, defendant essentially asks us to reweigh the evidence and draw our own conclusion regarding the witnesses' credibility, which is not our function. See *People v. Brown*, 2013 IL 114196, ¶ 48 ("[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses."). Accordingly, viewing the evidence in the light most favorable to the prosecution, the testimony that defendant was not acting in self-defense against the use of excessive force was not so improbable or unsatisfactory that there remains a reasonable doubt as to defendant's guilt. *Beauchamp*, 241 Ill. 2d at 8; *Collins*, 214 Ill. 2d at 217.

¶ 26    Defendant next contends that the trial court did not properly instruct the jury with respect to his claim that he lawfully acted in self-defense against Collier's use of excessive force. Specifically, defendant contends on appeal that the trial court should not have given the modified version of IPI Criminal 4th, No. 24-25.20 without also giving an additional non-IPI instruction explaining the excessive force exception to the limit on a person's right to resist the acts of a police officer. Without an additional non-IPI instruction on that point, defendant contends on appeal that

the modified version of IPI Criminal 4th, No. 24-25.20 given to the jury negated the self-defense instruction provided to the jury in the form of IPI Criminal 4th, No. 24-25.06, and precluded the jury from finding him not guilty even if they believed Collier choked him.

¶ 27    Defendant first contends that this issue was preserved because at the jury instruction conference he objected to giving IPI Criminal 4th, No. 24-25.20 and in his written posttrial motion he generally argued that the modified IPI Criminal 4th, No. 24-25.20 jury instruction provided by the trial court was an inaccurate statement of the law. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion). However, as the State correctly notes the specific argument defendant raises on appeal—that an additional non-IPI instruction was necessary to account for the purported conflict between IPI Criminal 4th, No. 24-25.20 and IPI Criminal 4th, No. 24-25.06—was not raised below. It is axiomatic that arguments may not be raised for the first time on appeal. *People v. Thompson*, 337 Ill. App. 3d 849, 854 (2003). As such, a specific objection at trial forfeits all grounds not specified. *People v. Cuadrado*, 214 Ill. 2d 79, 89 (2005); *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984); see also *People v. Spataro*, 67 Ill. App. 3d 69, 73 (1978) ("objections to instructions not raised in the trial court will not be considered for the first time on review"). Because defendant did not raise this specific jury instruction objection below, it has not been properly preserved for review on appeal.

¶ 28    Defendant alternatively asks this court to review this matter for plain error. The plain-error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error." *People v. Herron*, 215 Ill. 2d 167, 186 (2005). The plain-error doctrine is applied where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the

seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In either circumstance, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 182. A plain-error analysis begins by determining if there was reversible error in the first instance, as "[a]bsent reversible error, there can be no plain error." *People v. Cosby*, 231 Ill. 2d 262, 273 (2008).

¶ 29 However, defendant is unable to avail himself of the plain-error doctrine to address the specific argument he raises on appeal pursuant to the doctrine of invited error. Plain-error review is forfeited when the defendant invites the error. "[A] defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' " *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). The issue is sometimes referred to as one of estoppel. *Id*. That is, under the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error. *Id*. To allow a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend notions of fair play and encourage defendants to become duplicitous. *Id*. It would also deprive the State of the opportunity to cure the alleged defect. *People v. Bush*, 214 Ill. 2d 318, 332 (2005). Thus, these principles apply to preclude plain-error analysis.

¶ 30 At the jury instruction conference defense counsel tendered the self-defense instruction contained in IPI Criminal 4th, No. 24-25.06. It was *the State* that noted this instruction did not accurately state the law and suggested that this IPI instruction be modified to account for defendant's heightened burden to show that he acted in self-defense in response to "excessive force." Defense counsel rejected this suggestion and asserted that that defendant had shown

sufficient evidence of excessive force such that "we should be able to use the standard defense—self-defense instruction." It was only then that the trial court attempted to settle the dispute by providing both IPI Criminal 4th, No. 24-25.06 and a modified version of IPI Criminal 4th, No. 24-25.20 to "cover[] everyone's side."

¶ 31 It would offend notions of fair play and encourage duplicitous behavior to allow defendant to reject the State's suggestion to introduce the concept of excessive force into defendant's own proffered self-defense instruction, and then claim on appeal that the trial court erred in providing both IPI Criminal 4th, No. 24-25.06 and a modified version of IPI Criminal 4th, No. 24-25.20 without an additional clarifying instruction on excessive force. *Gibson*, 2021 IL App (1st) 190137, ¶ 18. Allowing plain-error review on appeal would also deprive the State of the opportunity to cure the alleged defect, an opportunity the State tried to take advantage of below but which was rejected by defense counsel. *Bush*, 214 Ill. 2d at 332.

¶ 32 We are therefore left to consider defendant's remaining alternative assertion that he was provided ineffective assistance of counsel where, "[w]hile counsel objected to giving the jury a modified version of IPI No. 24-25.20, counsel never tendered the defense's own instruction consistent with the theory of defense, namely that Oliver was justified in resisting Officer Collier's excessive force."

¶ 33 A claim of ineffective assistance of counsel is judged according to the two-prong test established in *Strickland v. Washington,* 466 U.S. 668 (1984). See *People v. Lawton,* 212 Ill. 2d 285, 302 (2004). In order to obtain relief under *Strickland,* a defendant must prove defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused defendant prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. *People v. Wheeler,* 401 Ill. App. 3d 304, 313

(2010). Effective assistance of counsel refers to competent, not perfect, representation. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994). Thus, a petitioner must overcome the presumption that the challenged conduct might be considered sound trial strategy under the circumstances. *People v. Mims*, 403 Ill. App. 3d 884, 890 (2010). A decision involving a matter of trial strategy will typically not support a claim of ineffective representation, and a defense counsel's choice of jury instructions is typically considered a tactical decision within that counsel's discretion. *People v. Mims*, 403 Ill. App. 3d 884, 890 (2010).

¶ 34    Furthermore, it is well settled "that a reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007). A mistake in trial strategy or an error in judgment will not render representation constitutionally defective. *Id.* at 355-356. "Only if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found." *Id.*

¶ 35    Defendant's contention that defense counsel's failure to offer a non-IPI instruction on excessive force fell below an objective standard of reasonableness faces an uphill battle. Again, decisions involving a matter of trial strategy will typically not support a claim of ineffective representation, and a defense counsel's choice of jury instructions is typically considered a tactical decision within that counsel's discretion. *Mims*, 403 Ill. App. 3d at 890.

¶ 36    Furthermore, both the relevant instructions provided by the trial court were either a verbatim IPI instruction or a slightly modified IPI instruction. Applicable IPI instructions are preferred over non-IPI instructions, and they should be used unless they do not accurately state the law. *People v. Askew*, 273 Ill. App. 3d 798, 809 (1995). Supreme Court Rule 451(a) provides that:

"Whenever Illinois Pattern Jury Instructions, Criminal, contains an instruction applicable in a criminal case, *** and the court determines that the jury should be instructed on the subject, the IPI Criminal instruction shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013).

¶ 37     Prior to the jury conference in this matter, at least one appellate court had found that giving the combination of IPI Criminal 4th, No. 24-25.06 and IPI Criminal 4th, No. 24-25.20 in a case such as this accurately states the law without any additional non-IPI instruction on the issue of excessive force. *People v. Fetter*, 227 Ill. App. 3d 1003, 1011 (1992). There, defendant challenged his conviction for aggravated battery of a police officer on the basis that the trial court rejected his proffered non-IPI instruction, which read: "The use of excessive force by a police officer invokes the right of self-defense." *Id*. Noting that the jury was provided with both IPI Criminal 4th, No. 24-25.06 and IPI Criminal 4th, No. 24-25.20, the appellate court rejected the defendant's argument after concluding that "the jury was instructed on the issue of self-defense" and defendant's non-IPI instruction was "not a necessary addition to the instruction that a person is generally not authorized to use force to resist arrest by a peace officer." *Id*.

¶ 38     After the trial in this matter, another court rejected a similar claim that the combination of IPI Criminal 4th, No. 24-25.06 and IPI Criminal 4th, No. 24-25.20 in situations such as presented here would be confusing for the jury. *People v. Ammons*, 2021 IL App (3d) 150743, ¶¶ 27-33. As such, it is improbable that the trial court would have provided any proffered non-IPI instruction, and defense counsel cannot therefore be faulted for failing to offer one. See *People v. Smith,* 2014 IL App (1st) 103436, ¶ 64 ("Defense counsel is not required to make futile motions or objections in order to provide effective assistance." (Internal quotation marks omitted.)).

¶ 39     It is true that the trial court provided a slightly modified version of IPI Criminal 4th, No.

24-25.20. Furthermore, on appeal defendant does specifically rest a portion of his argument on the confusion purportedly created by the fact that IPI Criminal 4th, No. 24-25.06 instructed the jury that a person can use force against the imminent use of "unlawful force," while the modified IPI Criminal 4th, No. 24-25.20 informed the jury that a person cannot use force to resist even a police officer's "unlawful act." The problem is that this argument does not accurately describe the modified IPI Criminal 4th, No. 24-25.20 instruction provided to the jury.

¶ 40    Instead, the record reflects that the actual modified instruction provided was as follows: "A person is not authorized to use force to resist an *authorized act* which he knows is being made by a peace officer, even if he believes that the act is *unauthorized* and the act is, in fact, *unauthorized*." (Emphasis added.) At no point in his briefs on appeal does defendant discuss this language or explain how defense counsel was ineffective for failing to provide a non-IPI instruction to clarify this specific language. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued on appeal are forfeited).

¶ 41    Finally, we note again that a mistake in trial strategy or an error in judgment will not render representation constitutionally defective. *Perry*, 224 Ill. 2d at 355-356. "Only if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found." *Id.* Here, even if we found some fault in defense counsel's performance, defendant makes no argument that his counsel failed to conduct meaningful adversarial testing of the State's case, and therefore he has failed to meet his burden to show he was provided ineffective assistance.

¶ 42    Next, defendant argues that he was prejudiced when the State improperly shifted the burden of proof to him during its rebuttal argument at the conclusion of trial. Acknowledging that this

issue was not preserved with a contemporaneous objection at trial, defendant asks this court to review the matter for plain error or for ineffective assistance of counsel. *Supra* ¶¶ 28, 33.

¶ 43    A prosecutor is allowed wide latitude during closing arguments, and may comment on the evidence presented at trial, as well as any fair, reasonable inferences therefrom. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005); *People v. Cook*, 2018 IL App (1st) 142134, ¶ 61. On review, we consider the challenged remarks in the context of the record as a whole, focusing in particular on the closing arguments of both sides. *People v. Williams*, 313 Ill. App. 3d 849, 863 (2000). Statements are not improper if they were provoked or invited by defense counsel's argument. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009).

¶ 44    Still, it is true that the prosecution has the burden of proving defendant's guilt beyond a reasonable doubt. *People v. McGee*, 2015 IL App (1st) 130367, ¶69; *People v. Lopez*, 152 Ill. App. 3d 667, 677 (1987). It is improper for the prosecution to shift the burden of proof during argument. *Id.*; *People v. Johnson*, 208 Ill. 2d 53, 115 (2004). However, the prosecutor may properly comment on defendant's failure to submit any evidence supporting his theory of the case or refuting the State's case against him, as long as the prosecutor does not state that defendant was obligated to present evidence creating reasonable doubt of his guilt. See *People v. Luna*, 2013 IL App (1st) 072253, ¶129 (citing *People v. Albanese*, 104 Ill. 2d 504, 521-22 (1984)); *Glasper*, 234 Ill. 2d at 212. Reversal is warranted only if the prosecutor's improper remarks substantially prejudiced defendant, that is, if the remarks constituted a material factor in his conviction. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007).

¶ 45    The parties disagree regarding the standard of review. Defendant argues that the question of whether statements by a prosecutor are so egregious that they warrant a new trial should be reviewed *de novo*. *Wheeler*, 226 Ill. 2d at 121 (applying *de novo* review). However, in *People v.*

*Blue*, 189 Ill. 2d 99, 128 (2000), our supreme court also stated that abuse of discretion is the appropriate standard of review, stating "regulation of the substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion" (internal quotation marks omitted).

¶ 46    This court has explained that no conflict exists between *Wheeler* and *Blue*, as "a reviewing court applies an abuse of discretion analysis to determinations about the propriety of a prosecutor's remarks during argument," but "reviews *de novo* the legal issue of whether a prosecutor's misconduct, like improper remarks during argument, was so egregious that it warrants a new trial." *People v. Cook*, 2018 IL App (1st) 142134, ¶ 64; *People v. Davis*, 2018 IL App (1st) 152413, ¶ 68; but see *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 48 (finding that "the abuse of discretion standard is the correct one"). In this case, defendant's claim of error fails under any standard.

¶ 47    Defendant specifically complains that he was prejudiced by the following comment during the State's rebuttal argument:

¶ 48         "Everything counsel just said, that's what he wants you to believe. Based on what? There's no evidence. Counsel's talked about no evidence. There's no evidence of self-defense. None at all. Since they raised it, where are the pictures of the bruising of the neck? Where are any of the citizen complaints?"

Defendant contends that these comments improperly shifted the burden of proof onto him with respect to his claim of self-defense. We disagree.

¶ 49    Defendant specifically focuses on the State's two rhetorical questions: "Since they raised it, where are the pictures of the bruising of the neck? Where are any of the citizen complaints?" However, these comments were a direct response to the following portion of defense counsel's

closing argument：

> "We have no hard evidence in this. We have no video. We have no film. We have nothing supporting the State's narrative outside of these police officers' testimony. And we don't have that in a space that is entirely controlled by the Chicago Police Department in which it is—like the role of that space is to interact with the public. I'm only left with the question why.

> \* \* \*

> I'm only left with the question why. Why is there no footage in a state and a county in which body-worn cameras are so common you see them almost every day. Why is there no surveillance footage? I would suggest to allow for exactly this. To allow for an officer to say whatever they want, to allow for an officer to say that they were battered when someone was really just being inconvenient.

> \* \* \*

> "The State has the burden, so they have the last opportunity to speak. But I'd ask you to consider what my counterargument might be. And the central fact—and I want to repeat this because it's critical—the central fact here is that we have no photos, we have no medical reports, no video, no body-worn camera, no surveillance, no citizen witnesses. None of these cops even bothered to pull out their cell phone and get some footage."

¶ 50    Clearly, it was defense counsel's specific complaint that the State presented no "medical reports" or "citizen witnesses" that prompted the State's comment on the similar lack of "pictures of the bruising of the neck" or "citizen complaints." Again, statements are not improper if they were provoked or invited by defense counsel's argument. *Glasper*, 234 Ill. 2d at 204. We also reiterate that the prosecutor may properly comment on defendant's failure to submit any evidence

supporting his theory of the case, so long as the prosecutor does not state that defendant was obligated to present evidence creating reasonable doubt of his guilt. *Luna*, 2013 IL App (1st) 072253, ¶ 129. That is clearly all the State did here. Finally, in the context of the record as a whole any possible impropriety in these remarks did not substantially prejudice defendant, as they did not constitute a material factor in his conviction. *Wheeler*, 226 Ill. 2d at 123.

¶ 51    Because we conclude that no error occurred with respect the State's rebuttal argument, we need not further determine if defendant met the standards applicable to his claims of plain error and ineffective assistance of counsel with respect to this issue. *Supra* ¶ 28, 33.

¶ 52    Finally, defendant contends that his 10-year sentence was excessive. Under the Illinois Constitution, a trial court shall impose a sentence that reflects both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. "[T]he trial court has broad discretionary powers in imposing a sentence." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The trial court receives "substantial deference" on sentencing decisions because the court, having directly observed the defendant and the proceedings, is in the superior position to weigh factors including "the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 53    A sentence within statutory guidelines is presumed proper (*People v. Knox*, 2014 IL App (1st) 120349, ¶ 46) and will only be disturbed where there is an abuse of discretion (*People v. Jones*, 168 Ill. 2d 367, 373-74 (1995)). An abuse of discretion exists where a sentence within statutory limits is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. In reviewing a defendant's sentence, this court "must not substitute its judgment for that of the trial court merely because it

would have weighed [the] factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 54    Furthermore, we will presume "that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary." *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 95. Ultimately "the seriousness of an offense, and not mitigating evidence, is the most important factor in sentencing" (*People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11), and "the presence of mitigating factors neither requires a minimum sentence nor precludes a maximum sentence" (*People v. Jones*, 2014 IL App (1st) 120927, ¶ 55).

¶ 55    Due to his two prior felony convictions, defendant was sentenced as a Class X offender to 10 years' imprisonment, well within the statutory range of 6 to 30 years. See 720 ILCS 5/12-3.05(d)(4)(i), (h) (2018). (aggravated battery of a police officer is a Class 2 felony); 730 ILCS 5/5-4.5-95(b) (West 2018) (certain defendants convicted of Class 1 or 2 felonies, after having twice been convicted of an offense with the same elements as an offense now classified in Illinois as a Class 2 or greater felony, shall be sentenced as a Class X offender); 730 ILCS 5/5-4.5-25(a) (West 2018) (for Class X felonies, the sentencing range is 6 to 30 years' imprisonment). Thus, we presume his 10-year sentence was proper absent some indication otherwise. *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 36, 38 (A defendant "must make an affirmative showing that the sentencing court did not consider the relevant factors.").

¶ 56    On appeal, defendant contends that his sentence was an abuse of the trial court's discretion considering this matter involved a minor event causing no harm and the extensive mitigating evidence presented to the trial court. However, the record reveals that the trial court extensively and specifically evaluated these very factors over more than 10 pages of transcript in crafting

defendant's sentence. The trial court specifically noted that no harm was caused by defendant's actions, and further noted all the specific mitigating evidence defendant now points to on appeal; *i.e.*, the fact that defendant's prior felonies occurred over two decades before and he was now employed, acting as his mother's caretaker, active in the lives of his children and grandchildren, and a volunteer at his church. Ultimately, the trial court concluded:

"Having considered all the factors in aggravation and mitigation, I do not believe that a sentence towards the top of the sentencing range is appropriate considering the facts of this case. I do not believe the minimum sentence is appropriate either. I believe for all the reasons I've stated a sentence of ten years Illinois Department of Corrections is appropriate."

¶ 57    Given the deference we owe to sentences within the statutory range (*People v. Vega*, 2018 IL App (1st) 160619, ¶ 64), coupled with the trial court's careful consideration of the factors in aggravation and mitigation, we do not see a justification to disturb the trial court's sentencing judgment.

¶ 58    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 59    Affirmed.