2024 IL App (4th) 230401

NO. 4-23-0401

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 26, 2024
Carla Bender
4th District Appellate
Court, IL

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| COURTNEY B. VESEY, | ) | No. 22CF481 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Norma Kauzlarich, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justice Harris concurred in the judgment and opinion.
Justice Turner dissented, with opinion.

**OPINION**

¶ 1        Defendant Courtney B. Vesey appeals from his conviction for aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2022)) for wrapping his arm around a police officer's neck after the officer tackled him onto a grassy hill behind a concrete retaining wall. At trial, defendant requested a jury instruction on self-defense, but the trial court found that there was insufficient evidence to support a self-defense instruction. On appeal, defendant argues that the court's decision was an abuse of discretion. We disagree and affirm.

¶ 2                                I. BACKGROUND

¶ 3        This case revolves around an altercation between defendant and three police officers on June 28, 2022. Defendant and his ex-wife Judinetta Robinson have a daughter, A.V.,

who was nine years old at the time. Pursuant to the terms of their divorce, Robinson had full physical custody of A.V., with defendant retaining court-ordered visitation rights on certain days, including the day of the altercation.

¶ 4 That morning, A.V. texted Robinson, saying, "We're going to heaven." Robinson immediately called A.V., who said some concerning things and told Robinson that she was at Longview Park in Rock Island. Robinson also heard defendant in the background saying, "Stop playing with me, Judy. You know who I am. I'm God. M[y] chariot is coming. It's descending down and we are going to heaven." Robinson immediately called 911 and left her home to go to the park, a 15- to 20-minute drive away.

¶ 5 Three Rock Island police officers went to the park in response to the call: Kristopher Kuhlman; Brett Taylor, who had worked for the police department for about six months and was undergoing field training; and Taylor's field training officer, Eugenio Barrera. All three officers were wearing body cameras that recorded the following events.

¶ 6 The officers parked in a parking lot adjacent to a sidewalk that wound into the park. A concrete brick retaining wall, approximately three feet high, ran along the opposite side of the sidewalk. Behind the retaining wall was a grassy hill. When the officers arrived, defendant was sitting with A.V. on the retaining wall. Defendant consented to a pat-down search, and the officers did not find weapons on his person. He emphasized that A.V. was safe but would not let the officers speak to her one-on-one.

¶ 7 Defendant said several disturbing things in front of the officers and A.V. He confirmed that he had said, "it's our day to go to heaven," but he would not explain to the officers what that meant. He referred to a time when he was a in a closet on Fifth Street, "fighting off all that s*** that was coming through them things." He continued, "Yesterday, they did the same

s***, saying motherf*** lizards, reptiles, all that s*** through my apartment." The officers asked defendant to explain the Fifth Street incident and whether he was "feeling down today," but he declined to clarify. He also wondered aloud why three officers had surrounded him and stated that he had previously dealt with the police at some point when he had tried to check on his daughter at Robinson's house.

¶ 8 Approximately 15 minutes later, Robinson arrived at the park and saw the police, defendant, and A.V. After the police talked with Robinson and A.V., they decided that A.V. should go with Robinson based on the disturbing things that defendant had said, and they would report the incident to the Department of Children and Family Services, who could determine whether A.V. would be safe with defendant. The officers approached defendant to explain this decision. In response, he emphasized that he had a legal right to time with his daughter.

¶ 9 From defendant's standpoint, the scene was as follows. He was standing on the sidewalk with the retaining wall to his left and Taylor on his right; behind Taylor was the parking lot. Barrera was in front of defendant on the left, and Kuhlman was in front of him on the right. Robinson and A.V. were sitting on the retaining wall behind Barrera and Kuhlman. The officers informed defendant that he was free to go, but he could not talk to A.V. and could not walk between Barrera and Kuhlman to get to his car in the parking lot. When asked, defendant said that he did not feel like hurting himself and did not want a mental health evaluation. As the officers stood in his way, he began to raise his voice, demanding that the officers show him the text messages where he said that he was God and that they give him his daughter.

¶ 10 Defendant shouted "legal right" and approached Barrera and Kuhlman. Kuhlman held out his arm and touched defendant's chest; defendant pushed Kuhlman's arm away. Taylor, having witnessed this, rushed defendant and tackled him onto the hill behind the retaining wall.

Taylor did not inform defendant that he was being arrested for aggravated battery against Kuhlman and did not make any effort to arrest defendant in a peaceful way. Taylor later testified at trial that he "thought that going hands-on was the most appropriate action at that time" based on a split-second decision. As defendant and Taylor were falling onto the hill, defendant wrapped his arm around Taylor's neck and continued holding his neck for approximately five seconds after they landed. The three officers pulled defendant and Taylor apart and arrested defendant.

¶ 11        Defendant was charged with two counts of aggravated battery of a peace officer: one count for pushing Kuhlman's arm and one count for wrapping his arm around Taylor's neck. Before trial, defendant filed a notice of intent to raise the affirmative defense of self-defense at trial. See Ill. S. Ct. R. 413(d) (eff. July 1, 1982) (requiring that "defense counsel shall inform the State of any defenses which he intends to make at *** trial").

¶ 12        The court proceeded to a jury trial in March 2023. The State called Robinson, Kuhlman, and Taylor to testify and introduced video from the body cameras worn by Kuhlman, Taylor, and Barrera. Defendant declined to testify or introduce any evidence in his defense. At the jury instruction conference, defendant sought an instruction on aggravated battery that incorporated an instruction on self-defense. See Illinois Pattern Jury Instructions, Criminal, No. 24-25.06A (4th ed. 2000). Over defendant's objection, the trial court declined to instruct the jury on self-defense, concluding that the evidence of self-defense was insufficient.

¶ 13        The jury acquitted defendant on count I for aggravated battery against Kuhlman but convicted him on count II for aggravated battery against Taylor. Defendant argued in a posttrial motion that the trial court should have instructed the jury on self-defense; the court denied the motion and sentenced defendant to 24 months' probation.

¶ 14        This appeal followed.

¶ 15                             II. ANALYSIS

¶ 16        We note at the outset that we are only reviewing defendant's conviction on count II; defendant's acquittal on count I is unreviewable. See Ill. Const. 1970, art. VI, § 6.

¶ 17                    A. Appellate Counsel's *Anders* Motion

¶ 18        Prior to filing an opening brief, defendant's counsel moved to withdraw from representing defendant pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that this appeal did not present any issues of arguable merit. After conducting the full examination of the proceedings required by *Anders* (*id.* at 744), we could not conclude that an argument regarding a possible self-defense instruction would be wholly frivolous, so we denied appellate counsel's motion without prejudice, allowing counsel to file a renewed motion or an opening brief on the issue. See *People v. Teran*, 376 Ill. App. 3d 1, 5 (2007) ("On a motion to withdraw, the ultimate responsibility to determine the frivolity of potential issues lies with this court rather than appellate counsel."); see, *e.g.*, *In re Alexa J.*, 345 Ill. App. 3d 985, 990 (2003) (denying appellate counsel's *Anders* motion without prejudice).

¶ 19        Defendant and the State have now fully briefed this issue. With the benefit of adversarial briefing, we conclude that the trial court did not commit reversible error. Nevertheless, we commend appellate counsel for zealously advocating on defendant's behalf with respect to this issue, which we believe is deserving of some clarification. See *Teran*, 376 Ill. App. 3d at 2 ("[A] nonfrivolous issue is not necessarily one that will be successful; it is merely an issue with arguable merit.").

¶ 20                         B. Standard of Review

¶ 21        When a defendant is charged with the aggravated battery of a police officer during an arrest, he may be able to raise the affirmative defense that his use of force was justified, *i.e.*,

that he acted in self-defense. See 720 ILCS 5/7-14 (West 2022). If the affirmative defense is properly raised, then the State has the burden of proving beyond a reasonable doubt that the defendant's use of force was *not* justified. *Id.* § 3-2(b); see, *e.g.*, *People v. Gray*, 2017 IL 120958, ¶ 50. The jury is responsible for deciding whether the State has met this burden; if the State has not, the jury should find the defendant not guilty. However, the jury will not know that it can acquit the defendant on this basis unless the trial court instructs the jury on the law governing self-defense. See *People v. Jones*, 175 Ill. 2d 126, 134 (1997) (explaining that a jury instruction on an affirmative defense supplies the jury with "the necessary tools to analyze the evidence fully and to reach a verdict based on those facts").

¶ 22       A defendant is entitled to a jury instruction on self-defense whenever there is some evidence of self-defense in the trial record, even if, as in this case, the defendant himself did not introduce any evidence on the issue. 720 ILCS 5/3-2(a) (West 2022); see, *e.g.*, *Jones*, 175 Ill. 2d at 132 (finding that a jury instruction was required on an affirmative defense when "the State's evidence alone was sufficient to raise the issue"). When determining whether to instruct the jury on self-defense, the trial court does not determine whether the defendant *in fact* acted in self-defense; that decision would be for the jury. See *People v. Washington*, 2012 IL 110283, ¶ 43. Rather, the court must provide the instruction "if there is some evidence, however slight, in the record to support th[e] defense." *Id.* The trial court may not invade the province of the jury by weighing the evidence or engaging in a credibility analysis. *People v. McDonald*, 2016 IL 118882, ¶ 25. Moreover, the evidence can be sufficient even if it is contradicted. *People v. Sims*, 374 Ill. App. 3d 427, 435 (2007).

¶ 23       The supreme court has held that, "when the trial court, after reviewing all the evidence, determines that there is insufficient evidence to justify the giving of a jury instruction,

the proper standard of review of that decision is abuse of discretion." *McDonald*, 2016 IL 118882, ¶ 42. In so holding, the supreme court disclaimed language from earlier opinions suggesting that the standard of review was *de novo*. See *id.* ¶ 41 (citing *Washington*, 2012 IL 110283, ¶ 56). Accordingly, we will reverse the trial court's determination that the evidence was insufficient only "where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *Id.* ¶ 32. When reviewing the trial court's decision for an abuse of discretion, we " 'must look to the criteria on which the trial court should rely.' " *People v. Ortega*, 209 Ill. 2d 354, 360 (2004) (quoting *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993)).

¶ 24                     C. The Applicable Criteria

¶ 25        In a case such as this, the trial court's decision is governed by several sections of the Criminal Code of 2012 (720 ILCS 5/1-1 *et seq.* (West 2022)). First is section 7-7, which states:

> "A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." *Id.* § 7-7.

¶ 26        The peace officer's use of force when making an arrest is governed by section 7-5, which provides, among other things:

> "[A peace officer] is justified in the use of any force which he reasonably believes, based on the totality of the circumstances, to be necessary to effect the arrest and of any force which he reasonably believes, based on the totality of the circumstances, to be necessary to defend himself or another from bodily harm while making the arrest." *Id.* § 7-5(a).

See *id.* § 7-5.5 (prohibiting certain uses of force by peace officers without reference to arrests). Section 7-5 further provides:

> "The decision by a peace officer to use force shall be evaluated from the perspective of a reasonable officer in the same situation, based on the totality of the circumstances known to or perceived by the officer at the time of the decision, rather than with the benefit of hindsight, and that the totality of the circumstances shall account for occasions when officers may be forced to make quick judgments about using force." *Id.* § 7-5(f).

¶ 27 If the officer's use of force is not justified under section 7-5, then it is considered excessive, and section 7-7 no longer applies to the arrest. *People v. Bailey*, 108 Ill. App. 3d 392, 398 (1982). After the officer uses excessive, unlawful force—but not before (see *People v. Haynes*, 408 Ill. App. 3d 684, 691 (2011))—the arrestee's own use of force is instead governed by section 7-1(a), the general self-defense statute, which states, "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2022). Section 7-1 is limited in turn by section 7-4, which provides that a person's use of force is generally not justified if he is the aggressor, except in certain specific circumstances. *Id.* § 7-4.

¶ 28 Putting these sections together leads to a two-step inquiry. First, the trial court must consider whether the trial record contains sufficient evidence of excessive force, as governed by section 7-5; if not, section 7-7 prohibits the defendant from raising the affirmative defense that his use of force was justified. If the evidence of excessive force *is* sufficient, then the trial court must still determine whether the trial record contains sufficient evidence of self-defense, as governed

- 8 -

by a six-element test established by the supreme court for evaluating claims under section 7-1. Stated another way, an officer's use of excessive force removes the protection of section 7-7, but that does not mean he loses the protection that would be afforded under section 7-1 to any other victim of aggravated battery who has used unlawful force on the defendant.

¶ 29 In this respect, we distance ourselves from language in *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 21, and other cases suggesting that "a jury instruction on self-defense is *required* where *** there is evidence that the arresting officer used excessive force." (Emphasis added.) Rather, we view the proposition that the "[u]se of excessive force by a police officer invokes the arrestee's right of self-defense" (*id.*) as meaning that section 7-1 provides the arrestee the same right of self-defense when excessive force is used on him as in any other situation where unlawful force is used on him. See *Bailey*, 108 Ill. App. 3d at 398-99; see also *People v. Bratcher*, 63 Ill. 2d 534, 538-39 (1976) (applying section 7-1 in a case involving an arrestee charged with aggravated battery of the police officer who arrested him). Although the officer's conduct is obviously central to the trial court's inquiry, the record must nevertheless contain sufficient evidence of all six elements of self-defense for a self-defense instruction to be appropriate under section 7-1. See, *e.g.*, *People v. Wicks*, 355 Ill. App. 3d 760, 764 (2005) (noting that, in addition to some evidence of excessive force, "there must be some evidence that the defendant acted out of fear for his safety in order to justify a self-defense instruction in these circumstances").

¶ 30 The trial court in the present case relied on the following formulation of the six-element test for self-defense:

"In order to instruct the jury on self-defense, the defendant must establish some evidence of each of the following elements: (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent;

- 9 -

(4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable." *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995). If the record lacks sufficient evidence of any one of these six elements, then the defendant cannot prevail on his claim of self-defense, so a jury instruction on self-defense is not warranted. See *id.* at 128.

¶ 31   We recognize that the supreme court has used a different formulation of the six-element test in some of its more recent cases, combining the first and fourth elements from *Jeffries* into a new first element that "unlawful force [was] threatened against a person" and adding a new fourth element, that "the use of force was necessary." See *Gray*, 2017 IL 120958, ¶ 50 (citing *People v. Lee*, 213 Ill. 2d 218, 225 (2004)); but see *Washington*, 2012 IL 110283, ¶ 35 (citing *Jeffries*, 164 Ill. 2d at 127-28). Neither party has challenged the trial court's reliance on *Jeffries*, and in any event, we may decide this case by addressing only the elements common to both formulations. Compare *Jeffries*, 164 Ill. 2d at 127-28, with *Gray*, 2017 IL 120958, ¶ 50.

¶ 32                          D. The Present Case

¶ 33   Here, the trial court considered section 7-1 without first explicitly addressing whether the officers' use of force was excessive under section 7-5. Assuming the trial court's silence reflected a failure to consider section 7-5, defendant cannot have been prejudiced because the error worked to his benefit by removing section 7-7 as a barrier to his effort to obtain a self-defense instruction. See *People v. Jordan*, 116 Ill. App. 3d 269, 274 (1983) ("The defendant cannot complain of error which favors his case."). On the other hand, the trial court may have tacitly concluded that there was sufficient evidence of excessive force to render section 7-7 inapplicable. In either event, our inquiry turns to the trial court's application of the six-element test.

¶ 34　　　　However, we pause to point out the trial court's statement that the officers were acting within the scope of their duties. Although the scope of an officer's duties could be relevant when the trial court considers whether his use of force was excessive under the totality of the circumstances (see 720 ILCS 5/7-5(a), (f), (h)(3) (West 2022)), we caution that a trial court may not *require* the record to contain evidence that the officer exceeded the scope of his duties as a prerequisite for finding that the record contains sufficient evidence of excessive force. The reason is that section 7-5 expressly *does not* authorize an officer to use unlimited force when making an arrest in the course of his official duties; if it did, no amount of force could ever be described as "excessive." See *id.* § 7-5; *id.* § 7-5.5; see also *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (finding a state statute unconstitutional to the extent it authorized "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances").

¶ 35　　　　Despite our concerns with some other aspects of the trial court's analysis, we choose to resolve this appeal on the fifth element of self-defense, whether defendant "actually and subjectively believed a danger existed which required the use of the force applied." *Jeffries*, 164 Ill. 2d at 128. On the facts of this case, the question is whether, even assuming defendant was responding to excessive force by Taylor, defendant actually and subjectively believed that wrapping his arm around the Taylor's neck was necessary to defend himself. The trial court ruled that the body camera footage and trial testimony did not include "some evidence" going to this element; if this ruling was not an abuse of discretion, then the court's refusal to instruct the jury on self-defense was not erroneous because the six-element test was not satisfied. See *id.* at 127-28. Our analysis is deferential; we do not independently review the facts (see *McDonald*, 2016 IL 118882, ¶ 42), and we consider only the evidence introduced at trial, which in this case did not include any testimony by defendant regarding his state of mind (see *Sims*, 374 Ill. App. 3d at 435

(reversing trial court's refusal to provide self-defense instruction when the record showed that the defendant "specifically testified that he was afraid during his encounter with the officers")).

¶ 36 We find that the trial court's ruling was not an abuse of discretion. Under the law, the use of force in one's defense is justified only in situations involving fear for one's safety, as opposed to situations merely involving frustration, anger, or astonishment. For example, in *Wicks*, 355 Ill. App. 3d at 764, this court upheld the denial of a self-defense instruction because "there was no evidence that [the] defendant acted out of fear," noting that the defendant "testified that he was upset and agitated, but never testified that he was afraid of the officers." Similarly, in *Bratcher*, 63 Ill. 2d at 540, the supreme court upheld the denial of a self-defense instruction even though the State's evidence included the defendant's statement "that he felt the officers 'were going to whip him' " because the defendant's "own testimony disclose[d] that he was not in fear at the time he struck the officer, and that his action was an automatic reaction to the officer's touch." However, in neither case was the defendant's inconsistent testimony dispositive; the reviewing court's focus was on the entire trial record. See *Wicks*, 355 Ill. App. 3d at 764; *Bratcher*, 63 Ill. 2d at 540 ("[T]his court has repeatedly held that '[a] defendant is entitled to the benefit of any defense shown by the entire evidence, even if the facts on which such defense is based are inconsistent with the defendant's own testimony' [citations] ***.").

¶ 37 After reviewing the trial record in the present case, which consists only of the State's evidence, we find that the trial court could have reasonably concluded that defendant's action of wrapping his arm around Taylor's neck was either the result of frustration (*Wicks*, 355 Ill. App. 3d at 764), or "an automatic reaction" (*Bratcher*, 63 Ill. 2d at 540). Either way, the court's conclusion that this record reflected something other than actual fear on defendant's part was

within the bounds of reason and justified its refusal to instruct the jury on self-defense. See *Wicks*, 355 Ill. App. 3d at 764.

¶ 38 Because defendant's failure to satisfy this element was sufficient to defeat his claim of self-defense, we need not address his arguments on the remaining elements.

¶ 39                                        III. CONCLUSION

¶ 40 For the reasons stated, we affirm the trial court's judgment.

¶ 41 Affirmed.

¶ 42 JUSTICE TURNER, dissenting:

¶ 43 I respectfully dissent. I would reverse the trial court's judgment and remand for a new trial because of the trial court's failure to instruct the jury on self-defense.

¶ 44 The advent of police body cameras provides courts with an evidentiary firsthand view of incidents previously only described by eyewitness testimony. In this case, the State presented body camera footage from all three officers involved in the incident, as well as a version in slow motion of footage from the cameras of Officers Barrera and Kuhlman. The body camera footage indisputably shows Officer Taylor tackled defendant straight on over a concrete retaining wall causing defendant to fall backward. As defendant was falling backward, his unprotected head and body were exposed to slamming into the ground or concrete, and defendant wrapped his arms around the tackling officer. The unrefuted evidence is Officer Taylor made a face-to-face tackle of defendant without alerting defendant in any way of the action he was about to take. From watching the footage, it is obvious a juror could infer defendant acted instinctively out of fear for his safety and actually and subjectively believed a danger existed requiring the use of the force he applied to Officer Taylor.

¶ 45            Notwithstanding the foregoing, the majority finds the trial "court's conclusion that this record reflected something other than actual fear on defendant's part *was within the bounds of reason and justified its refusal to instruct the jury on self-defense*." (Emphasis added.) *Supra* ¶ 37. However, even if it was within the bounds of reason for the trial court to conclude defendant did not act out of fear, such a conclusion does not govern the determination of whether a self-defense instruction should be given. As the majority appropriately observes, some evidence defendant was acting in self-defense, however slight, obligates the court to give a self-defense instruction. *Supra* ¶ 22; see *McDonald*, 2016 IL 118882, ¶ 25 (noting the standard for giving a lesser-offense instruction is "whether there is *some evidence* in the record that, if believed by the jury, will reduce the crime charged to a lesser offense, not whether there is *some credible* evidence" (emphases in original)); *McDonald*, 2016 IL 118882, ¶ 40 (explaining the consideration for whether the defendant is entitled to a self-defense instruction is whether "there is some evidence in the record that, if believed by a jury, would support the defense"). Moreover, unlike in *Wicks*, 355 Ill. App. 3d at 764, and *Bratcher*, 63 Ill. 2d at 539, defendant did not testify his response to the officer's tackle was simply due to him being upset or agitated. See *supra* ¶ 36. Also, as pointed out by the majority, the law entitles a defendant to a self-defense instruction even if the defendant himself did not introduce any evidence on the issue. *Supra* ¶ 22. In addition, I note the majority's citation of *Wicks* (*supra* ¶ 37) is entirely misplaced. First, the defendant in *Wicks* was tried and convicted of resisting a peace officer, whereas here, the State elected to charge defendant with aggravated battery, a Class 2 felony (720 ILCS 5/12-3.05(h) (West 2022)), and opted not to pursue resisting charges. Second, the paragraph in *Wicks* cited by the majority simply does not support the proposition a trial court may refuse to give a self-defense instruction merely because it was "within the bounds of reason" for the court to conclude the defendant did not act out of fear. *Supra* ¶ 37.

This interpretation of *Wicks* is contrary to existing case law. In essence, it endorses the trial court's weighing of the video evidence in a light most favorable to the State and against defendant and thus improperly invades the province of the jury. See *McDonald*, 2016 IL 118882, ¶ 25. Accordingly, unlike the majority, I would find the trial court abused its discretion by failing to instruct the jury on self-defense. As a result of the court's failure, I would reverse defendant's aggravated battery conviction and remand for a new trial.

*People v. Vesey*, **2024 IL App (4th) 230401**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 22-CF-481; the Hon. Norma Kauzlarich, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Elliott A. Borchardt, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Dora Villarreal, State's Attorney, of Rock Island (Patrick Delfino, David J. Robinson, and Connor Goetten, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |