2025 IL App (1st) 230966-U

FIFTH DIVISION
March 28, 2025

No. 1-23-0966

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 7112 |
| | ) | |
| MARTIN EJIMOFOR, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for battery is affirmed where a rational trier of fact could find that he knowingly bit the officer attempting to handcuff him and that the State negated at least one element of self-defense.

¶ 2    Following a bench trial, defendant Martin Ejimofor (also sometimes referred to as Martin Ejimo in the record) was found guilty of battery and sentenced to 28 days in jail. Mr. Ejimofor now appeals, arguing that the State failed to prove beyond a reasonable doubt that he knowingly bit the victim, a police officer. In the alternative, Mr. Ejimofor maintains that the State failed to prove his actions were not in self-defense. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Ejimofor was charged by indictment with one count of aggravated battery of a police officer for biting Chicago police officer Peter Vinson in the arm while he was performing his official duties (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)).

¶ 5      During pretrial proceedings, Mr. Ejimofor disclosed that he may rely on the affirmative defense of self-defense.

¶ 6      At trial, Officer Vinson testified that on May 20, 2022, he was working as a transport officer at the 6th District police station, responsible for preparing and transferring arrestees to court. At around 6 a.m. that day, Mr. Ejimofor, an arrestee being held at the station, refused to answer any of the screening questions necessary for transport, and Chicago police officers Julius Beacham and Richard Griffin escorted him back to his jail cell. Officer Vinson then heard a "commotion" from the cell block. The sounds included officers ordering Mr. Ejimofor back into the cell and a vibration like someone being pushed up against a wall.

¶ 7      After about a minute, Officer Vinson went to assist the officers and saw Mr. Ejimofor wedging himself against the cell door and pushing against an officer so that the door could not be closed. Officer Vinson stepped in and pushed Mr. Ejimofor into the cell while Officer Beacham simultaneously tried to grab and close the cell door. Mr. Ejimofor pushed back and "took a swing" at Officer Vinson, making contact with his forehead and knocking his glasses off his face. Officer Vinson then "grabbed" Mr. Ejimofor around his arms and moved him to the bench in the cell. While that was happening, Mr. Ejimofor was "[f]lailing" his body and "[t]rying to get away." The situation was "kind of dynamic," and Mr. Ejimofor "may have thrown a few more punches."

¶ 8      Once at the bench, Officer Vinson tried to handcuff Mr. Ejimofor because Mr. Ejimofor became more aggressive. As he was trying to grab Mr. Ejimofor's arm, Officer Vinson felt pain in

his right forearm and saw Mr. Ejimofor biting him. He released Mr. Ejimofor, moved to the side, and assessed the bite mark. Officer Vinson received treatment at a hospital. A detective investigating the case and an evidence technician took photographs of Officer Vinson's injuries. This court has viewed the photographs, which were entered into evidence without objection and are included in the record on appeal. The photographs depict a forearm with deep bite marks about an inch or two below the wrist.

¶ 9     A video, without sound, from the jail cell block, People's Exhibit No. 1, was played and entered into evidence without objection. This court has viewed the video. Starting at 6:16:52, the video shows two officers holding Mr. Ejimofor's arms and bringing him into the cell. Mr. Ejimofor is wearing black pants and an unzipped black hoodie with no shirt. Mr. Ejimofor struggles against the officers' grip on his arms and moves toward the cell door as soon as they let go of him. One officer stands in the doorway and pushes Mr. Ejimofor into the cell. Mr. Ejimofor moves towards the cell door again, and the officer turns Mr. Ejimofor around and pushes him into the cell.

¶ 10     As the officer exits the cell's doorway, Mr. Ejimofor turns and lunges into the doorway where the officer had been standing. Mr. Ejimofor then stands in the doorway and turns his body sideways, so that his right foot is inside his cell, and the left is outside the doorway and out of the camera's view. A hand holds Mr. Ejimofor's hoodie and pushes Mr. Ejimofor into the cell while Mr. Ejimofor struggles against the officer's grip. Two more sets of hands appear and push Mr. Ejimofor into the cell. An officer exits the cell again, and Mr. Ejimofor once more stands in the cell doorway with one foot outside the cell door, and he appears to be talking to someone. A hand pushes Mr. Ejimofor into the cell, and Mr. Ejimofor struggles against it.

¶ 11     About one minute later, a third officer, identified in court as Officer Vinson, enters the cell and pushes Mr. Ejimofor further into the cell. Officer Vinson holds Mr. Ejimofor from behind,

pinning Mr. Ejimofor's arms to his sides. They struggle as they enter the cell, where Officer Vinson moves Mr. Ejimofor to the bench located opposite the cell door. Three officers follow them inside, so that at this point it appears that six officers are involved in restraining Mr. Ejimofor. Officer Vinson leans over Mr. Ejimofor and another officer moves to their side, blocking Mr. Ejimofor from the camera's view. After a few seconds, Officer Vinson moves away and another officer takes his place. Officer Vinson exits the cell as Mr. Ejimofor struggles while being held down by three officers on the bench.

¶ 12    On cross-examination, Officer Vinson confirmed that he was familiar with the Chicago Police Department General Order pertaining to the use of force, which prohibits the use of force in retaliation and as punishment but permits force within specified parameters. When Mr. Ejimofor punched him in the face, Officer Vinson "definitely wanted to gain control" of Mr. Ejimofor so that Mr. Ejimofor did not hit him again. Officer Vinson felt his use of force was appropriate at that point. Once Mr. Ejimofor was on the bench, Officer Vinson punched him because he was biting Officer Vinson and Officer Vinson wanted him to release the bite. Mr. Ejimofor held the bite for maybe three seconds. When asked if he had his arms around Mr. Ejimofor's neck, Officer Vinson responded, "Yes, but I released that." When asked to confirm, Officer Vinson stated that he did not recall having his arms around Mr. Ejimofor's neck. He also did not recall whether there was a point at which Mr. Ejimofor's breathing was impeded by his actions. He agreed that his forearm had to be near Mr. Ejimofor's mouth to be bitten.

¶ 13    On redirect examination, Officer Vinson testified that he punched Mr. Ejimofor after Mr. Ejimofor had punched him and knocked off his glasses. Officer Vinson was trying to gain control of Mr. Ejimofor, who was not going back in the cell. On recross-examination, Officer Vinson confirmed that the video footage does not show Mr. Ejimofor punching him.

¶ 14    Officer Beacham testified consistently with Officer Vinson's testimony. Mr. Ejimofor was rejected from the transport van to bond court because he refused to answer any screening questions, and he then refused to enter his cell. Officer Beacham explained that Mr. Ejimofor would walk into the cell and then stick his arms or legs out to prevent the door from closing, which happened five or six times. Mr. Ejimofor also braced his body and "kind of" pushed Officer Beacham to prevent being pushed in the cell. After about a minute, Officer Vinson arrived and tried to assist with moving Mr. Ejimofor into his cell. It became more of a struggle because Mr. Ejimofor was pushing against Officer Beacham, Officer Vinson, and Officer Griffin. Officer Vinson pushed the door and "it [went] from a pushing contest to more of a physical struggle."

¶ 15    Mr. Ejimofor hit Officer Vinson and knocked his glasses off. Officer Vinson got Mr. Ejimofor to the bench in the cell, and the officers tried to restrain him so that they could close the cell door. Mr. Ejimofor was not complying and was still using his arms and legs to get free. As Officer Beacham attempted to get a hold of one of Mr. Ejimofor's arms to handcuff him and Officer Vinson tried to hold the other arm, Officer Beacham heard Officer Vinson scream that Mr. Ejimofor bit him.

¶ 16    On cross-examination, Officer Beacham confirmed that he and Officer Vinson were larger than Mr. Ejimofor. Officer Vinson punched Mr. Ejimofor "two or three" times after Mr. Ejimofor knocked his glasses off.

¶ 17    Mr. Ejimofor testified that he resisted being returned to his cell because he was trying to learn why he had been arrested the previous day. He recalled that Officer Vinson pushed and shoved him, then threw him towards the bench in the cell, where he "received multiple strikes to [his] body and face." At one point, Mr. Ejimofor felt "a body part *** restraining [his] neck from breathing," and he was "in fear of [his] life and automatic refle[x] of self-defense." He was just

trying to make sure he was able to get air. It was "possible" that he opened his mouth as he was trying to "catch the air and exhale to catch [his] breath." He "probably" closed his jaw down on something, "but not in the intention of trying to like get back or anything of the sort." He "wanted to live to see the next day."

¶ 18    On cross-examination, Mr. Ejimofor admitted that he was unhappy and frustrated because he was in the cell for about 12 hours and no one had told him why he had been arrested the day before. The State replayed portions of the video. Mr. Ejimofor denied that he tried pushing his way out of the cell and maintained he was "talking to the officer" at the time. It was "possibl[e]" that the officers were unable to close the door because he was in the doorway. Mr. Ejimofor confirmed that he was "[p]ushing the cell door, talking to the officer." Mr. Ejimofor stated that, to his knowledge, he did not hit Officer Vinson and "[p]ossibly" bit Officer Vinson. He explained again that when he was gasping for air, his mouth was open and "there [was] a possibility" that he could have closed his mouth once he "caught [his] air."

¶ 19    In rebuttal, the State presented a stipulation to Mr. Ejimofor's medical records, which showed that on May 20, 2022, he was involuntarily admitted to the hospital for a psychiatric evaluation. The stated basis was that he was aggressive, hostile, hallucinating, and putting his head in the toilet. Admission hospital records documented that Mr. Ejimofor required restraints due to being combative and fighting staff. A psychiatric assessment the next day noted that Mr. Ejimofor was calm and cooperative and did not need inpatient psychiatric hospitalization. The records noted scabs and cuts to Mr. Ejimofor's hands and forearms.

¶ 20    Before announcing its findings, the court noted that the "the video is clear in showing that at one point the officer did have his arm around Mr. Ejimofor's neck." When the court asked the State to respond, the State argued that self-defense was unavailable where Mr. Ejimofor refused

to admit to punching or biting Officer Vinson. The court found Mr. Ejimofor guilty of the lesser included offense of battery (720 ILCS 5/12-3(a)(1) (West 2022)). Mr. Ejimofor filed a post-trial motion, arguing the evidence was insufficient to show that he knowingly bit Officer Vinson, where it was an involuntary reflex to try to regain control of his breathing. The court denied the motion, stating it "carefully considered" the officer's testimony and video and found that Mr. Ejimofor intentionally bit the officer.

¶ 21    The court sentenced Mr. Ejimofor to 28 days in jail.

¶ 22                                    II. JURISDICTION

¶ 23    Mr. Ejimofor was sentenced on May 18, 2023, and timely filed his notice of appeal that same day. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. March 12, 2021), governing appeals from final judgments in criminal cases.

¶ 24                                    III. ANALYSIS

¶ 25    On appeal, Mr. Ejimofor argues the evidence failed to show that he knowingly bit Officer Vinson where the biting was an involuntary byproduct of his gasping for air when his breathing was impeded by Officer Vinson's arm around his neck. In the alternative, Mr. Ejimofor argues that the State failed to prove he was not justified in biting Officer Vinson in self-defense where Officer Vinson punched him multiple times, slammed him onto the bench, and held him down with his bodyweight, and where he feared for his life when Officer Vinson's arm was around his neck so that he struggled to breathe.

¶ 26    In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "

(Emphasis omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact's role is "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). It is not our function to retry the defendant. *People v. Gray*, 2017 IL 120958, ¶ 35. We will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or credibility of the witnesses. *Id.* A conviction will not be overturned "unless the evidence is so unreasonable, improbable, or unsatisfactory" that reasonable doubt exists as to the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 27    "The testimony of a single witness is sufficient to convict if the testimony is positive and credible." *Gray*, 2017 IL 120958, ¶ 36. "[I]t is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole." *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004). A witness's testimony may be found insufficient to convict "only where the evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Corral*, 2019 IL App (1st) 171501, ¶ 72. A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims the witness was not credible. *People v. Bonaparte*, 2014 IL App (1st) 112209, ¶ 41.

¶ 28    A person commits battery if he knowingly, without legal justification, by any means causes bodily harm to an individual. 720 ILCS 5/12-3(a)(1) (West 2022). Mr. Ejimofor contends the State failed to prove that he acted knowingly when he bit Officer Vinson. Rather, the evidence showed that the bite was an involuntary byproduct as Mr. Ejimofor opened and closed his mouth struggling to breathe with Officer Vinson's arm around his neck.

¶ 29    Knowledge is a question of fact for the trier of fact to decide. *People v. Frazier*, 2016 IL

App (1st) 140911, ¶ 23. A defendant acts knowingly when he is consciously aware that his conduct, or the circumstances of his conduct, will result in the conduct described in the statute of the offense. 720 ILCS 5/4-5(a) (West 2022). Knowledge is rarely shown by direct evidence and is usually established by circumstantial evidence, including inferences from the surrounding facts and circumstances. *People v. Slabon*, 2018 IL App (1st) 150149, ¶ 35.

¶ 30   In this case, the State presented evidence that showed that Mr. Ejimofor was hostile and uncooperative with the officers as they attempted to move him into his cell after he refused to answer screening questions necessary for his transport to court. Mr. Ejimofor admitted he was unhappy and frustrated. According to the officers' testimony, Mr. Ejimofor was the first to throw a punch when he struggled with Officer Vinson, knocking Officer Vinson's glasses off. Mr. Ejimofor remained uncooperative and persisted in trying to get away as Officer Vinson moved him to the bench where the officers tried to handcuff him. Officer Vinson's testimony was that Mr. Ejimofor bit him as the officers tried to handcuff him. Even after Officer Vinson moved away from Mr. Ejimofor after the bite, Mr. Ejimofor continued to resist against the three remaining officers attempting to handcuff him.

¶ 31   The court heard and assessed Mr. Ejimofor's testimony recounting the involuntary bite as well as Officer Vinson's testimony that Mr. Ejimofor bit him as he was trying to handcuff him, and it accepted Officer Vinson's version of events. We do not reweigh evidence or assess the court's credibility findings on review. *Gray*, 2017 IL 120958, ¶ 35.

¶ 32   When viewing the totality of the evidence in a light most favorable to the State, we find that a rational trier of fact could find Mr. Ejimofor acted knowingly when he bit Officer Vinson in the course of resisting the officers. See *People v. Swenson*, 2020 IL 124688, ¶ 35 (stating that "[a]ll

reasonable inferences are drawn in favor of a finding of guilt"). As such, the trial court's finding of guilt was sufficiently supported by the evidence.

¶ 33    In the alternative, Mr. Ejimofor argues that the State failed to prove that he was not acting in self-defense where Officer Vinson escalated the situation, used unlawful excessive force, and placed Mr. Ejimofor in fear of his life by putting his arm around his neck. Self-defense is an affirmative defense and has the legal effect of admitting that the underlying acts occurred but denying legal responsibility. *People v. Freneey*, 2016 IL App (1st) 140328, ¶ 32.

¶ 34    The elements of self-defense are (1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable. *Id*. ¶ 30. Once a defendant has raised the affirmative defense of self-defense, the burden shifts to the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. *Gray*, 2017 IL 120958, ¶ 50. The State need only negate one element to overcome the defendant's claim of self-defense. *Id*.

¶ 35    The parties disagree as to whether self-defense was an available affirmative defense here where Mr. Ejimofor's primary defense was that his biting Officer Vinson was an accident. The State argues that by asserting the defense that he bit Officer Vinson by accident, Mr. Ejimofor has negated any claim of self-defense. Mr. Ejimofor argues that so long as there is evidence to support a claim of self-defense, his assertion that the battery was an accident does not preclude this affirmative defense. Both parties cite cases in support of their legal arguments. We need not determine what limits, if any, Mr. Ejimofor's defense that he did not intentionally bite Officer Vinson had on his right to also assert self-defense because, here, a reasonable trier of fact could

find that the force used by the officers was not excessive and therefore not unlawful.

¶ 36    Generally, an officer "may use any force reasonably necessary" against an arrestee, while the arrestee "has no right to use force to resist" unless the officer uses excessive force. *People v. Sims*, 374 Ill. App. 3d 427, 432 (2007). However, if an officer uses excessive—and thus unlawful—force, then an arrestee may use self-defense. *Id.* It is "[t]he use of excessive force [that] invokes the right of self-defense." *Id.* On this record, a reasonable trier of fact could have found that the officers did not use excessive force.

¶ 37    While the trial court in this case recognized that the officers were aggressive with Mr. Ejimofor, aggressive does not necessarily equal excessive. It is clear that the trial court accepted the officers' testimony and believed the force used was reasonable. On this record, we cannot say that no reasonable trier of fact could have found the same. Accordingly, the evidence was sufficient to show that Mr. Ejimofor was not acting in self-defense.

¶ 38    In conclusion, the evidence is sufficient to find Mr. Ejimofor guilty of battery beyond a reasonable doubt.

¶ 39                                        IV. CONCLUSION

¶ 40    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 41    Affirmed.